**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

FILED & ENTERED

NOV 0 5 2007

CLERK
U.S. BANKRUPTCY COURT
SAN JUAN, PUERTO RICO

| IN THE MATTER OF | : | |
|---|---|---|
| JOSE MANUEL NAZARIO LUGO | : | CASE NO. 05-08905(SEK) |
| DEBTOR | : | CHAPTER 7 |

--------------------------------

### OPINION AND ORDER DISMISSING THIS CASE FOR CAUSE

Before the Court is Puerto Rico Electric Power Authority's ("PREPA's"), motion to dismiss this case pursuant to § 707(a) of the Bankruptcy Code.[1]

### Background

Facts relevant to the contested matter at hand, began in 1996 when PREPA determined that meters installed in Debtor's business had been altered and manipulated. PREPA charged Debtor for the consumption of electricity that had not been registered. When first notified of this action, Debtor admitted and agreed to pay the charges, reneging the agreement the next day. From that day on, Debtor embarked on a pattern of objecting to all the invoices without even remitting partial payments.[2] In addition, six personal checks issued by Debtor totaling $24,955.53, were



-----

[1] All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior April 20, 2005, 11 U.S.C. § 101, et seq. Furthermore, we have both subject matter and personal jurisdiction under 28 U.S.C. § 1334, F.R.B.P. 3007 & 9013, and this issue involves a core matter under 28 U.S.C. § 127(b)(K).

[2] Law 33 of June 27, 1985, 27 L.P.R.A. §§ 262, et seq., establishes that utility providers are unable to suspend services for nonpayment of invoices when the client objects the charges. This inability persists until the objection is finally adjudicated.

dishonored for insufficient funds.  He never replaced these checks.  As a result of Debtor's objections, PREPA inspected the electrical system installed in Debtor's premises several times, always concluding the charges were justified.[3]

In early 2002, PREPA referred Debtor's case to an external examiner.  Debtor continued to object the invoices on the same grounds.

On March 3, 2003, while the administrative proceeding was still pending, Debtor filed in Sate Court a civil suit against PREPA, claiming damages in the amount of $45,000.00.[4]  In that suit, Debtor asserted he was the owner of a restaurant called "El Bohio" and an ice plant named "El Taino Ice Plant".

On June 24, 2003, the administrative proceeding was dismissed for Debtor's failure to appear and prosecute the claims.  The same happened again on September 21, 2005, when Debtor's second complaint was dismissed for the same reasons.

On September 16, 2005, Debtor filed a Chapter 7 Bankruptcy petition.  He scheduled $148,694.51 in unsecured debt held by three creditors, to wit; PREPA in the amount of $93,363.30; Cooperativa de Ahorro y Credito de Ciales, in the amount of $39,029.21; and, JR Reynolds, in the amount of $16,000.00.[5]



---

[3] More than thirty electric appliances, including commercial freezers and ovens, in debtor's personal residence and two businesses relied on the electricity provided by PREPA.

[4] The record does not show whether this suit was still pending the day of the bankruptcy filing.

[5] PREPA filed proof of claims amounting to $208,405.53, Cooperativa de Ciales' claim totaled $39,677.32 and JR Reynolds

-2-

Debtor also disclosed that at the time of the filing of the petition, he had zero income; owned no personal or real property; he was not a party to any pending suits or administrative proceedings; and, that during the previous year he had made no payments to insider creditors. Debtor also stated that he had not owned a business in the preceding six years.

On February 8, 2006, PREPA requested the dismissal of the case, claiming Debtor had made false representations and provided false information to the Court in a bad faith attempt to conceal assets and prevent creditors from collecting their claims. Specifically, PREPA claimed: (1) debtor's bankruptcy filing was part of an eight year scheme employed by debtor to avoid paying his electrical bill; (2) that on March 2, 2005, six months before the filing of the bankruptcy petition, debtor transferred all his interest in property to his son, but failed to report the transaction in his schedules; (3) debtor owned and operated a restaurant and an ice manufacturing plant at the time he filed the bankruptcy petition, but failed to disclose these facts and to report any income generated by these businesses; and, (4) debtor failed to include in the bankruptcy schedules information about suits and administrative procedures that were pending at the date of the filing.

PREPA's motion was accompanied by thirty-six exhibits. These documents detailed, how the debt arose, debtor's complaints related to his electrical bills, investigations conducted by PREPA in



---

did not file a claim.

-3-

response to his multiple complaints, and the internal procedures employed to validate and collect PREPA's debt.  PREPA also provided a copy of a notarized document executed by debtor on March 2, 2005, transferring his interest in real property to a son as payment for antecedent debts.[6]  In that document, debtor affirmed he owned the real property conveyed in fee simple.  In addition, PREPA included unsworn statements given by three of its employees attesting that during October 2005, they visited the address provided by debtor, which turned out to be the site of the restaurant El Bohío, on three different occasions in order to disconnect the electricity. Each time, they found Restaurant "El Bohio" open for business. Each time, debtor approached the employees, harassed them and urged them to leave the premises.[7]

Debtor claims the situation with PREPA arose due to their "intransigent" position and attributed his financial misfortunes to the power company's actions.  Debtor avers his son became the owner of all his properties as of July 8, 2004, when the lenders forestalling the foreclosure sales in executing of their



---

[6] This exhibit also reflects that the antecedent debt arose when some of the proceeds of the son's loan for $300,000.00 were used to pay some of debtor's debts. Debtor's real property and businesses known as "El Bohio" and "Taino Ice Plant" secured repayment of the son's debt.

[7] On the 13th, these tactics prevented the workers from performing their work. On the 18th, thanks to the intervention of the police, the service was finally disconnected. However, on the 28th, the employees had to return to the premises because the electric service had been illegally reconnected to PREPA's system. On that date, the restaurant was still open for business.

-4-

mortgages.[8] Thus, he denies having owned a business during the year preceding bankruptcy. Next, Debtor claims the notarized document mentioned by PREPA did not evidence a transfer to an insider creditor, or that he owned property six months before the bankruptcy filing. Debtor states he and his son executed the document acknowledging a transaction that already has taken place. Finally, Debtor denies having generated income from the operation of a business, and states that his only income came from construction work.

Debtor provided three exhibits, written in Spanish, as evidence for his claims. The Court ordered him to provide official English translations, which he failed to do.[9] Hence, under <u>United States v. Rivera-Rosario</u>, 300 F.3d 1 (1st Cir. 2002), we were unable to admit these exhibits, or consider their contents.[10]

Therefore, since the parties waived their right to an

---

[8] Debtor's own motion contravenes these statements; in the last section of his objection to PREPA's motion, he claimed that his properties, businesses and sources of income had been lost since February 14, 2003.

[9] The Court's order was given on March 23, 2007. On April 19, 2007 debtor requested a thirty-day extension for filing the documents. Today, more than six months later, the documents still have not been filed.

[10] These exhibits were: (1) a State Court judgment, dictated on February 14, 2003, instructing the Clerk of the court to order the Marshall to schedule a foreclosure sale to execute debtor's real property (after this judgment, but before the foreclosure sale, debtor's son obtained the $300,000.00 and paid the lender); (2) a copy of a bank document detailing the disbursements provided to debtor's son in account of the aforementioned loan; and (3) a copy of the notarized document executed by debtor on March 2, 2005. The latter document was included as evidence by PREPA.



evidentiary hearing, and we provided sufficient time for production of translated documents filed by debtor, the matter is ripe for adjudication.

## Discussion

### I. *Whether debtor filed his petition with bad faith.*

As the Bankruptcy Code does not define good or bad faith, the courts provide meaning to these terms by establishing the circumstances that would evidence one or the other. Accordingly, a debtor would be labeled as a bad faith filer when there is: (1) an "intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence", <u>Industrial Ins. Servs., Inc. V. Zick (In re Zick)</u>, 931 F.2d 1124, 1129 (6th Cir. 1991); (2) the concealment or misrepresentation of assets or sources of income, <u>Id</u>; (3) failure to make full disclosure, <u>In re Spagnolia</u>, 199 B.R. 362, 365 (Bankr.W.D.Ky.1995); (4) the transfer of assets, <u>Id</u>; or (5) dishonesty toward the bankruptcy court, <u>In re Khan</u>, 172 B.R. 613, 625 (Bankr.D.Minn.1994).

In the case at bar, the evidence shows debtor exploited the system so that the power company could not cutoff the electricity despite non payment of the electrical bill. Debtor engineered the following scheme to swindle PREPA. He filed frivolous objections to each electrical bill after 1996,[11] remitted several checks that later bounced, and stalled the resolution of his objections to the



---

[11] As stated before, PREPA carried many investigations, and communicated the results to debtor, but debtor kept objecting every invoice on the same grounds. Meanwhile, he continued to consume high amounts of electricity in his two businesses and personal residence.

bills by failing to appear at various hearings. His actions constitute gross negligent misconduct, designed to intentionally evade his obligation to pay his electrical bills. Moreover, tampering and manipulating PREPA's meters and remitting checks with insufficient funds are some of the fraudulent acts debtor devised to consummate his scheme.

Debtor's filings in bankruptcy are fraught with inaccurate disclosures, displaying his dishonest behavior toward the Court. As the record shows, on the day of the filing, debtor had undisclosed income[12] and was a party to an administrative procedure conducted by PREPA. He also owned and transferred real property to a son[13] six months prior to his bankruptcy filing[14] and owned two businesses within six years prior to his petition. He nevertheless failed to disclose these facts in the schedules accompanying his bankruptcy petition.

Due to the foregoing, we conclude debtor's filing was tainted with bad faith.

**II. Dismissal under 11 U.S.C. § 707(a)**



---

[12] Debtor stated he derived his income from construction work. Furthermore, the fact that debtor received PREPA's employees, and the way he reacted each time they visited Restaurant "El Bohio", suggests that he was operating the business and earning income from it.

[13] This transaction allegedly extinguished an antecedent debt. Thus, the son should be viewed as an insider creditor.

[14] The evidence produced by PREPA, the notarized document executed by debtor, calls into question debtor's arguments relating to the alleged transaction previously carried with his son.

-7-

Section 707(a) of the Bankruptcy Code authorizes the court to dismiss a Chapter 7 case proceeding "only after notice and hearing and only for cause". Although the statute lists three nonexclusive examples of circumstances in which a case could be dismissed for cause, it fails to provide a formal definition for such term. For this reason, as is often the case when statutory construction is required, there is a split of authority regarding the application of § 707(a) and the question of whether bad faith is a valid reason for the dismissal of a case under the statute.

One line of cases answers this question in the affirmative, applying Code § 707(a) to fend off bad faith filings.[15] U.S. v. Pedigo, 329 B.R. 47, 48 (S.D.Ind. 2005). Its proponents believe that bankruptcy is a remedy for the unfortunate, but honest debtor whom, despite best efforts, cannot escape financial misfortunes. In re Zick, *supra* 1129-1130; In re Jones, 114 B.R. 917, 926 (Bankr. N. D. Oh. 1990). Accordingly, they employ § 707(a) – based on the absence of a formal definition for the term cause and the nonexclusive basis of the examples provided in the statute – as a gate-keeping tool to safeguard the integrity of the bankruptcy process. McDown v. Smith, 295 B.R. 69, 74-75(E.D.Va.2003).

In contrast, the other line of cases asserts that Congress intended the application of § 707(a) to be exclusively premised on



---

[15] This is the approach adopted by the majority of the courts. U.S. v. Pedigo, *supra* at 48. However, after the amendments of 2005, § 707(b)(3) of the Bankruptcy Code explicitly governs the dismissal of a case for bad faith. 6 Collier on Bankruptcy, § 707.03[2] (15th ed. Rev.). Hence, § 707(a) should no longer be used for this purpose.

the "for cause" statutory standard, and refuses to dismiss a case solely on bad faith grounds. In re Huckfeldt, 39 F.3d 829, 832 (8th Cir. 1994); Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1192 (9th Cir. 2000). For these courts, the "for cause" standard of the statute is satisfied, and the dismissal of a case required, when the bankruptcy is filed for non-economic motivations, or when debtor violates technical or procedural requirements of Chapter 7, such as failing to file necessary information.

Here, we do not have to chose between these views as the result would be the same under either one. Applying the first view to the facts at hand, we dismiss this case as a bad faith filing. Using the second, narrower application of § 707(a), we dismiss the petition for debtor's failure to accurately disclose all the information required by the bankruptcy schedules.

**SO ORDERED**, in San Juan, Puerto Rico, on November 5, 2007.

SARA DE JESUS
U.S. Bankruptcy Judge

-9-